GRIFFIN, J.
This is an appeal of a final judgment entered pursuant to an arbitration award. Because of irregularities in the procedure followed, we reverse.
The suit below was a medical malpractice claim which arose from allegedly negligent acute cardiac care that resulted in gangrene, bilateral leg amputation and renal failure. Suit was originally filed in August, 1995. The appellants, Efrain Flores Gallardo and his wife, Elizabeth [“the Gallardos”], sued Meredith L. Scott, M.D., Cardiovascular Surgeons, P.A., Robert D. Bloodwell, M.D., Kerry M. Schwartz, M.D., Charles Curry, Jr. M.D., Salvador N. Lanza, M.D. and Florida Heart Group, P.A. [“the defendants”]. The final judgment on appeal was in favor of six of the seven defendants. Dr. Blood-well did not participate in the arbitration proceeding from which the final judgment was entered.
In April of 1997, trial was scheduled for the last week of October 1997. Various of the medical defendants filed continuance motions in May of 1997, January of 1998, May of 1998, September of 1998, December of 1999 and November of 2000. The parties participated unsuccessfully in court-ordered mediation in 1999. Thereafter, at a non-transcribed pretrial conference, the trial court apparently orally directed the parties to participate in nonbinding arbitration. The colloquy during the hearing on the motion for entry of judgment indicates how the arbitration became court-ordered. The trial judge expressed the view that the case should not be tried until the parties attempted voluntary nonbinding arbitration. Counsel for one set of defendants, however, objected that he thought his clients would be unwilling to participate in such a proceeding. The judge asked if it would help if he ordered them to participate and the lawyer replied that it would because they would obey the court’s order.
The arbitration proceeding took place on August 9, 2000. The three arbitrators thereafter wrote a letter to the trial court, stating that “the arbitrators did not believe there was sufficient evidence to warrant a finding of negligence on behalf of either of the two Defendants.” [1] The letter is dated August 16, 2000, but a stamp from the law offices of one of the arbitrators on the back of the second page of the two-page letter bears the date August 22, 2000, and the letter was not filed in court until September 7, 2000.
*1239 The arbitrators did not send to either the Gallardos, or to any of the defendants, a copy of their letter to the trial court. Raphael Martinez, counsel for defendants Schwartz, Curry, Lanza and the Florida Heart Group, at some point became aware of the arbitrators’ letter. On October 31, 2000, Martinez wrote to counsel for the Gallardos and to counsel for codefendants Dr. Scott and Cardiovascular Surgeons, P.A. He explained that, in reviewing the court file, he had discovered that “the arbitrators had not carbon copied the parties with their decision,” and that, “therefore, I am enclosing a copy of the arbitrator’s [sic] ruling.”
Six days later, on November 6, 2000, the defendants represented by Martinez filed a motion to continue the trial that had been set for December 11, 2000, on the ground that they had not yet deposed new experts for the plaintiffs. On November 9, 2000, Dr. Scott and Cardiovascular Surgeons, P.A. likewise filed a motion to have the trial continued. Plaintiffs filed an objection.
On December 4 and 5, 2000, all of the defendants except Dr. Bloodwell filed motions to have the arbitration award enforced. In their motions, the defendants asserted that the arbitration panel had rendered a decision on August 16, 2000, in their favor, that all of the parties had received written notice of the decision on October 31, 2000, and that because no party had requested a trial de novo within twenty days of service of the arbitrators’ decision, that decision, pursuant to section 44.103, Florida Statutes (1999), and applicable court rules, should be made final by the trial court.
At a hearing on the motion, the trial judge said that, in ordering the parties to arbitration, he was not aware of either the statute or the rule. He, nonetheless, “reluctantly” granted the motion, ruling that the law gave the court no choice but to enter final judgment against the Gallardos. The trial court entered a final judgment in favor of the six defendants.
In its effort to promote alternative dispute resolution, the Florida Legislature has enacted statutes creating or codifying a whole raft of “ADR”[2] procedures and devices. Section 44.103, Florida Statutes (1999), entitled “Court-ordered Nonbinding Arbitration,” provides in relevant part:
(1) Court-ordered, nonbinding arbitration shall be conducted according to the rules of practice and procedure adopted by the Supreme Court.
(2) A court, pursuant to rules adopted by the Supreme Court, may refer any contested civil action filed in a circuit or county court to nonbinding arbitration.
(3) Arbitrators shall be selected and compensated in accordance with rules adopted by the Supreme Court. Arbitrators may be compensated by the county or by the parties. Compensation for arbitrators shall not exceed $200 per day, unless otherwise agreed by the parties and approved by the court. Whenever possible, qualified individuals who have volunteered their time to serve as arbitrators shall be appointed. If an arbitration program is funded pursuant to s. 44.108, volunteer arbitrators shall be entitled to be reimbursed pursuant to s. 112.061 for all actual expenses necessitated by service as an arbitrator.
(4) An arbitrator or, in the case of a panel, the chief arbitrator, shall have such power to administer oaths or affirmation and to conduct the proceedings as the rules of court shall provide. At the request of any party to the arbitration, such arbitrator shall issue subpoe *1240 nas for the attendance of witnesses and the production of books, records, documents, and other evidence and may apply to the court for orders compelling such attendance and production. Subpoenas shall be served and shall be enforceable in the manner provided by law.
(5) The arbitration decision shall be presented to the parties in writing. An arbitration decision shall be final if a request for a trial de novo is not filed within the time provided by rules promulgated by the Supreme Court. The decision shall not be made known to the judge who may preside over the case unless no request for trial de novo is made as herein provided or unless otherwise provided by law. If no request for trial de novo is made within the time provided, the decision shall be referred to the presiding judge in the case who shall enter such orders and judgments as are required to carry out the terms of the decision, which orders shall be enforceable by the contempt powers of the court, and for which judgments execution shall issue on request of a party.
(6) The party having filed for a trial de novo may be assessed the arbitration costs, court costs, and other reasonable costs of the party, including attorney’s fees, investigation expenses, and expenses for expert or other testimony or evidence incurred after the arbitration hearing if the judgment upon the trial de novo is not more favorable than the arbitration decision.
Pursuant to the statute, the supreme court promulgated Florida Rule of Civil Procedure 1.820, which provides in relevant part:
(b) Conduct of the Arbitration Hearing.
(1)The chief judge of each judicial circuit shall set procedures for determining the time and place of the arbitration hearing and may establish other procedures for the expeditious and orderly operation of the arbitration hearing to the extent such procedures are not in conflict with any rules of court.
(2) Hearing procedures shall be included in the notice of arbitration hearing sent to the parties and arbitration panel.
(3) Individual parties or authorized representatives of corporate parties shall attend the arbitration hearing unless excused in advance by the chief arbitrator for good cause shown.
[[Image here]]
(g) Completion of the Arbitration Process.
(1) Arbitration shall be completed within 30 days of the first arbitration hearing unless extended by order of the court on motion of the chief arbitrator or of a party. No extension of time shall be for a period exceeding 60 days from the date of the first arbitration hearing.
(2) Upon the completion of the arbitration process, the arbitrator(s) shall render a decision. In the case of a panel, a decision shall be final upon a majority vote of the panel.
(3) Within 10 days of the final adjournment of the arbitration hearing, the arbitrator(s) shall notify the parties, in writing, of their decision. The arbitration decision may set forth the issues in controversy and the arbitrator (’s)(s’) conclusions and findings of fact and law. The arbitrator (’s)(s’) decision and the originals of any transcripts shall be sealed and filed with the clerk at the time the parties are notified of the decision.
(h) Time for Filing Motion for Trial. Any party may file a motion for trial. If a motion for trial is not made within 20 days of service on the parties of the decision, the decision shall be referred *1241 to the presiding judge, who shall enter such orders and judgments as may be required to carry out the terms of the decision as provided by section 44.103(4), Florida Statutes.
As can be seen, Florida Rule of Civil Procedure 1.820 provides that hearing procedures for arbitration are to be formulated by the chief judge of each circuit and that such procedures must be included in the “notice of arbitration hearing sent to the parties and arbitration panel.” Fla. R. Civ. P. 1.820(2). Clearly, the rule requires that, in order to commence and effectuate a statutory court-ordered arbitration, the court must send to the parties and the arbitrators a written notice which is to include procedures established by the chief judge that are to be followed. Here, the trial court did not follow this procedure in any respect.
Then, contrary to the statute[3] and rule, the arbitrators sent a letter to the trial judge in which they informed the judge that their decision was one of no liability. Contrary to the rule, the arbitrators’ decision was not sent to any of the parties. Moreover, it was not filed with the clerk until nearly a month after the hearing. Ironically, virtually the only aspect of the statute or rule that was followed in this case was entry of judgment for all defendants.
This case presents two questions: first, whether enactment of section 44.103 and the rule implementing the statute have made this procedure the only means by which parties may now engage in nonbinding arbitration ordered by a court. It is plain from the trial judge’s own candid comments that he was ignorant of the statute and, accordingly, could not have intended to invoke its procedures when verbally entering his order. Second, assuming, as the trial court did, that the procedures in the statute and rule govern all court-ordered nonbinding arbitrations, no matter what the judge or the parties intended,[4] can such a proceeding be so procedurally defective that it will not be enforced against a nonconsenting party? We conclude the answer is “yes” to both questions.
The defendants’ main argument is that because the Gallardos participated in the arbitration which they knew to be “court-ordered” and “nonbinding,” they were on constructive notice that such arbitration was governed by section 44.103 and Rule 1.820. The Gallardos counter that given that almost none of the statutory or rule requirements for the commencement or conduct of the proceedings were followed by the court or the arbitrators, the Gallar-dos were not on notice and should not be the ones burdened by the court’s lack of compliance with the governing procedures. It was never specified by the court, the arbitrators, nor their opponents, that the nonbinding arbitration verbally ordered by the judge was to be the nonbinding arbitration controlled by section 44.103 and rule 1.820.
The defendants rely on Klein v. J.L. Howard, Inc., 600 So.2d 511 (Fla. 4th DCA 1992) and Johnson v. Levine, 736 So.2d 1235 (Fla. 4th DCA 1999), for the proposition that the trial court lacked discretion to not make the arbitration award final. In Klein, the plaintiff had apparently sought to avoid entry of judgment after failing to request a trial de novo based on the fact that the arbitrator’s order had not been rendered within ten days of the adjourn- *1242 merit of the arbitration hearing. The court explained that the rule and statutory provisions requiring a party to request a new trial within twenty days of service of the arbitration award are mandatory, but the deadline for rendering a decision is merely directory. Even though the language of Rule 1.820(g)(3) is as mandatory as that of Rule 1.820(h), the Klein court seems to suggest that only rule provisions that specify consequences for not being followed are mandatory. Those that do not, are not. The cases cited by the Klein court, however, suggest that legislative intent is the key.
In Department of Business Regulation, Division of Pari-Mutuel Wagering v. Hyman, 417 So.2d 671 (Fla.1982), the supreme court rejected the argument that a final order issued by an administrative agency beyond the time specified by statute caused that order to be unenforceable. The court observed that the legislature had in other contexts in Chapter 120 specified penalties for missing time deadlines but had specified none for missing the deadline in section 120.59(1). Thus, said the Hyman court, it cannot be assumed that there is a mandatory consequence for failure to meet the deadline. Rather, legislative intent had to be gleaned from elsewhere in the statute. Looking to section 120.68(8), the court found the test appropriate in that statutory context to be whether missing the deadline had caused an impairment in the fairness of the proceedings, or the correctness of the action. 736 So.2d at 1239.
We do not disagree with the result in Klein and we do not believe the Klein court means to say that no matter how many provisions of section 44.103 or Rule 1.820 are ignored, the trial de novo deadline of section 44.103(4) alone must inflexibly be applied simply because it is the only one with an express consequence. Just from reading the statute, it can be seen that such was not the legislature’s intent. Besides, the entry of final judgment is not a consequence of failing to follow the rule requirement; to the contrary, the entry of judgment is merely the end point of the statutory procedure itself. It is the stage of the proceeding where the decision is made (expressly or constructively) not to proceed with a trial after learning what the arbitrators thought of the claim. It would turn the arbitration procedure on its head to say that entry of judgment is the penalty for not timely requesting a trial de novo.
At the very least, it can be seen that the legislature intended to create an entire statutory scheme that would permit the trial courts to make beneficial use of the power to order arbitration as a prerequisite to a trial. As devised, the legislature envisioned that the parties would have clear notice of what would occur and how and when it would occur. The rule clearly requires a written notice that includes specification of the hearing procedure. The failure to request at trial de novo within twenty days in this case does not require entry of judgment because of the number and the seriousness of the many defects in this proceeding leading up to entry of the judgment.
REVERSED and REMANDED.
PETERSON, J., concurs.
PLEUS, J., dissents, with opinion.

. Presumably, this means the two groups of defendants.

. Alternative Dispute Resolution.

. § 44.103(5), Fla. Stat. (1999).

. Indeed, it might be a perfect topic for a professionalism seminar to consider whether counsel for defendants had a duty to alert counsel to the statute either before or after the twenty days expired.